UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANDESH LIMITED,

        Plaintiff,

v.

                                                      File No. 1:10-cv-1039

ROTATE BLACK, INC., et al.,        HON. ROBERT HOLMES BELL

        Defendants.
                                                      /

## **O P I N I O N**

        This matter is before the Court on Plaintiff's motion for partial summary judgment. (Dkt. No. 20.)  Plaintiff seeks summary judgment on its Count III breach of contract claim against Defendant Rotate Black, Inc. ("RBI"), and on its Count IV breach of contract claim against Defendant Rotate Black, LLC ("RBL").  For the reasons that follow, the Court will grant Plaintiff's motion with respect to RBL's liability for breach of contract under Count IV.  With respect to Count III, the Court will grant summary judgment in favor of Defendant RBI.

I.

        In early 2008, Defendant Randy Edgerton approached Plaintiff with an investment proposition involving Defendant Rotate Black, Inc. and Solstice, Inc., corporations in the business of developing and managing casinos.  On March 13, 2008, Plaintiff, RBI and Solstice entered into a Stock Subscription Agreement (hereinafter the "2008 Agreement") containing the following relevant terms:

    a) Solstice would sell 1,200,000 shares of its Common Stock to Plaintiff at the purchase price of $1 per share, at the total purchase consideration of $1,200,000;
    b) Solstice would merge with RBI within thirty days of the execution of the 2008 Agreement;
    c) Upon merger, RBI would replace Solstice's shares being held by Plaintiff with RBI's shares that were tradable on the NASDAQ;
    d) RBI would grant Plaintiff an option ("put option") to require RBI to purchase all or any portion of RBI / Solstice's shares being held by Plaintiff at a purchase price of $2 per share;
    e) Plaintiff could exercise the put option prior to the "first anniversary of the date of [the] [2008] Agreement" by delivering to RBI a written notice of intent to exercise the option within 90 days prior to the "first anniversary";
    f) The put option would terminate if / once RBI shares were registered and freely tradable on the NASDAQ and any other recognized stock exchanges in the United States for $2 per share for a period of 10 consecutive trading days.

(Dkt. No. 20 Ex. A.)

On March 26, 2008, RBI delivered 1,200,000 shares to Plaintiff. (Dkt. No. 20 at 3.) The following day, Plaintiff authorized a wire transfer of $1,200,000 in favor of RBI. (*Id.*) It is undisputed that Plaintiff received 1.2 million RBI shares, and that RBI received $1.2 million dollars.

From April 2008 through December 2008, shares of RBI never traded at or above $2 per share on any stock exchange in the United States. On December 13, 2008, Plaintiff notified Edgerton and RBI in writing that Plaintiff was exercising the put option contained in the 2008 agreement on the 1,200,000 RBI shares that it was holding. (*Id.* at 4.)

On February 17, 2009, Defendant Edgerton informed Plaintiff that RBI was not in a position to purchase Plaintiff's RBI shares at $2 per share, but proposed that Plaintiff enter

2

into a new agreement with RBL. On March 3, 2009, Plaintiff entered into a Stock Purchase Agreement with RBL ("hereinafter the "2009 agreement"). Under the terms of this new agreement:

> a) RBL would purchase 1,200,000 RBI shares being held by Plaintiff at $2 per share;
> b) The closing of the purchase of these shares would take place on May 15, 2009;
> c) At the closing, RBL would pay Plaintiff $ 2.4 million and in turn, Plaintiff would advise its custodian to deliver to RBL the RBI shares being held by Plaintiff;
> d) In consideration of the foregoing, the put option in the 2008 Agreement would be rendered void.

(Dkt. No. 20 Ex. B.) This second agreement is signed by Plaintiff and RBL; RBI is not a signatory. However, Defendant Edgerton provided the signature both for RBI in the 2008 agreement, and for RBL in the 2009 agreement. (*Id.* Ex. A, B.)

Defendants did not come up with the $2,400,000 purchasing price by the May 15, 2009, closing date set in the 2009 agreement. Over the next year, Plaintiff, Defendant Edgerton, and John Paulsen (who serves as both CEO of RBI and managing partner of RBL) engaged in an increasingly frustrated series of communications concerning Defendants' failure to execute the purchase of Plaintiff's RBI shares. (Dkt. No. 20 at 6-10; *Id.* Ex. J-CC.) Defendants proposed several modified payment schedules, but never followed through with any payments. (*Id.*) Plaintiff commenced this action on October 25, 2010.

## II.

Summary judgment is proper when the evidence shows "that there is no genuine issue

as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Both claimants and parties defending against a claim may move for summary judgment, with or without supporting affidavits. Fed. R. Civ. P. 56(a), (b); *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009).

This rule mandates that summary judgment be granted, "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In making its determination, the Court "must consider all the facts in light most favorable to the non-movant and must give the non-movant the benefit of every reasonable inference." *Am. Council of Certified Podiatric Physicians and Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 619 (6th Cir. 1998).

III.

Plaintiff seeks summary judgment on Counts III and IV holding RBI and RBL jointly and severally liable for $2.4 million. It is undisputed that Plaintiff paid for and received 1.2 million RBI shares under the 2008 contract, and that Plaintiff properly attempted to exercise the put option contained in the 2008 agreement to sell those shares to RBI at $2 a share. It is also clear that RBI never met that obligation. The main dispute before the Court involves the subsequent agreement between Plaintiff and RBL, a related entity, which by its terms obligates RBL to purchase Plaintiff's shares at the same $2 price and terminates RBI's obligation.

Plaintiff maintains that the put option obligating RBI to purchase Plaintiff's shares for $2.4 million remains valid notwithstanding the 2009 agreement because: (1) there is no valid consideration in the 2009 agreement for Plaintiff's waiver of its put option under the 2008 contract, and (2) because RBI is not a signing party to the 2009 contract, there is no mutual agreement between Plaintiff and RBI to modify the 2008 contract.

As an initial matter, the Court notes that Plaintiff's arguments are incompatible with its requested relief of joint and several liability against RBI and RBL. The sole purpose of the 2009 agreement is the assumption by RBL of RBI's obligation to purchase Plaintiff's shares under the 2008 agreement. If the 2009 agreement between Plaintiff and RBL is invalid for lack of consideration — either because Plaintiff was already entitled to a $2.4 payment, or because Plaintiff's agreement to void the 2008 put option was ineffectual — then RBL may not be held liable for breach of contract. Thus, either of Plaintiff's arguments for preserving the 2008 put option agreement, if accepted, would void the 2009 agreement and relieve RBL of liability for breach of contract. However, the Court finds that neither argument is supported.

Plaintiff's argument concerning consideration and the preexisting duty rule must fail as a matter of law. Under the 2009 agreement, Plaintiff agreed to surrender its right to sell its shares to RBI at $2 a share in exchange for RBL's promise to buy those same shares at the same price. Although Plaintiff is correct in stating that it was already entitled to a $2.4 million payment under the 2008 contract, the obligation to make that payment rested solely

with RBI. The parties agree that RBI and RBL are separate and distinct entities. (Dkt. No. 23 at 2.) Under the 2009 agreement, RBL promised to purchase Plaintiff's 1.2 million shares in exchange for Plaintiff's agreement to waive the put option against RBI under the 2008 agreement. RBL's promise to replace RBI as the purchaser of Plaintiff's shares constitutes valid consideration for Plaintiff's promise to waive its put option against RBI.

Plaintiff's second argument also fails. Plaintiff is correct that contract modification requires mutual consent. However, in denying the existence of mutual consent to void the 2008 put option, Plaintiff relies overmuch on the fact that RBI was not a signing party to the 2009 agreement. "[N]otwithstanding a written modification or anti-waiver clause . . . [the] mutuality requirement is satisfied where a waiver or modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to modify or waive the particular original contract." *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 373 (2003). Thus, a written agreement signed by both Plaintiff and RBI is not necessary to establish a mutual agreement to modify the 2008 agreement.

Plaintiff's signing of the 2009 agreement is clear and convincing evidence that Plaintiff consented at that time to void the 2008 put option. No other reading of the document is possible, as the sole purpose of the 2009 contract is the transfer of RBI's obligation to purchase Plaintiff's 1.2 million shares to RBL. Plaintiff does not dispute this in its brief; rather, Plaintiff's argument is that the lack of RBI's signature on the 2009

agreement demonstrates that *RBI* did not consent to the modification. While a signature on behalf of RBI would have made the situation even plainer, the Court finds that there is sufficiently clear and convincing evidence to grant summary judgment in favor of RBI on Count III.[1]

Voiding the 2008 put option is clearly in RBI's interest, and it is difficult to imagine a scenario where RBI would not consent to the abrogation of its responsibility to purchase Plaintiff's shares. Furthermore, it is clear that RBI knew of and participated in the formulation of the 2009 agreement. The 2009 agreement between Plaintiff and RBL was initially proposed by Defendant Randy Edgerton, the man representing RBI in its dealings with Plaintiff. (Dkt. No. 20 at 5.) Although RBI is not a signatory of the 2009 agreement, it was Edgerton who signed for RBL, just as he signed for RBI in the 2008 agreement. (Dkt. No. 20 Exs. A-B.) All of Plaintiff's communications with RBI and RBL concerning the 2009 contract and delayed payment were made through Edgerton and John Paulsen, who serves as both Chief Executive Officer of RBI and Manager of RBL. Although the parties agree

---

[1] Plaintiff, not Defendants, moved for summary judgment on counts III and IV. (Dkt. No. 20.) Defendants, however, urged the Court to grant summary judgment in favor of RBI on Count III. (Dkt. No. 22 at 7.) Plaintiff argues that Defendants' request should not be considered, as Defendants did not file a cross-motion for summary judgment. However, a court may enter summary judgment *sua sponte* in favor of a non-moving party when the moving party has had adequate opportunity to present evidence on the issue on which summary judgment is granted. *See Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 204 (6th Cir.1998); *see also First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109 at 115 (2nd Cir. 1999) ("[A]s long as some party has made a motion for summary judgment, a court may grant summary judgment to a non-moving party[.]"). Plaintiff clearly had an opportunity to present all arguments concerning RBI's liability for breach of contract.

that RBI and RBL are separate entities for purposes of this motion, it is clear that RBI, through Edgerton and Peterson, was involved in proposing and formulating the 2009 agreement between Plaintiff and RBL. The facts provided by Plaintiff belie the argument that there was no mutual agreement between RBI and Plaintiff to modify the 2008 contract.

Plaintiff is, however, entitled to summary judgment on Count IV against RBL. The 2009 agreement is valid, and it expressly obligates RBL to purchase Plaintiff's shares at a price of $2 per share. Defendants do not deny this obligation, and summary judgment on the issue of RBL's liability for breach of contract is therefore appropriate.

The Court declines to calculate an award of damages at this time in light of Defendants' argument that Plaintiff failed to mitigate damages. Defendants argue that Plaintiff was obligated to mitigate damages by selling its shares. Plaintiff counters that selling the shares would have been premature as Defendants never disavowed an obligation to buy them, that selling the shares would have weakened its position with respect to the Defendants, and that selling the shares to a third party would not have minimized loss. (Dkt. No. 23 at 6-8.) While Plaintiff's arguments appear persuasive, Defendants have raised questions of fact which preclude the actual calculation of damages at the summary judgment stage.

IV.

The Court finds the 2009 agreement between Plaintiff and RBL is supported by consideration and obligates RBL to purchase Plaintiff's RBI shares at the price of $2 a share.

The Court also finds that the 2009 agreement voids the put option against RBI in the 2008 agreement. Accordingly, summary judgment in favor of Plaintiff will be granted with respect to RBL's liability under Count IV, and summary judgment will be granted in favor of RBI on Count III. An order consistent with this opinion will be entered.


Dated: November 2, 2011                                /s/ Robert Holmes Bell
                                                              ROBERT HOLMES BELL
                                                              UNITED STATES DISTRICT JUDGE